# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## PEOPLE v ELLIS

Docket No. 166766. Argued on application for leave to appeal March 11, 2026. Decided July 22, 2026.

In December 2021, defendant, James Ellis, Jr., pleaded guilty in the Berrien Circuit Court to a charge of attempted unarmed robbery, MCL 750.530; MCL 750.92, and was sentenced to serve one to five years in prison. Because defendant had been convicted of attempted rape in 1983, the trial court, Sterling R. Schrock, J., also imposed a lifetime requirement that defendant register as a Tier III offender on the sex-offender registry under MCL 28.723(1)(e)—the "recapture" provision of the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*—which applies to those who were convicted of an offense enumerated in the SORA before its effective date and are subsequently convicted of any other felony on or after July 1, 2011. Defendant moved to correct an invalid sentence, challenging the registration requirement and the constitutionality of the recapture provision, and the trial court denied the motion. The Court of Appeals, REDFORD, P.J., and RIORDAN and FEENEY, JJ., affirmed in an unpublished per curiam opinion. However, the Court of Appeals concluded that defendant, an out-of-state resident, did not have to register under SORA unless he became a resident or temporary resident of Michigan. Defendant applied for leave to appeal in the Supreme Court, which ordered oral argument on the application. 516 Mich 887 (2024). The Court issued a second briefing order after deciding *People v Kardasz*, ___ Mich ___ (December 19, 2025) (Docket No. 165008), allowing the parties to address whether *Kardasz* affected the issues outlined in the Court's first order. ___ Mich ___; 29 NW3d 156 (2026).

In a unanimous opinion by Chief Justice CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The imposition of SORA registration requirements under MCL 28.723(1)(e) as a penalty for nonsexual offenses is cruel or unusual punishment as applied to defendant and similarly situated individuals and is therefore unconstitutional under Const 1963, art 1, § 16. The Court of Appeals judgment was reversed and the case was remanded to the trial court to remove the registration requirement from defendant's judgment of sentence.

1. Defendant's constitutional claims were ripe for review, even though defendant was not currently required to register in Michigan, because his judgment of sentence, which includes a

registration requirement, was a final decision from which an actual or concrete injury could be determined.

2. SORA's recapture provision, MCL 28.723(1)(e), is triggered by the more recent felony conviction, not the initial sexual offense that was committed before SORA went into effect. Accordingly, the provision was properly analyzed first under cruel-or-unusual-punishment principles rather than ex post facto principles.

3. The imposition of SORA registration requirements on individuals convicted of a nonsexual offense who also have a pre-SORA sexual-offense conviction was unconstitutional under Const 1963, art 1, § 16, which prohibits the infliction of cruel or unusual punishment. The registration requirements of the recapture provision constituted punishment under *Kardasz*, which held that the 2021 SORA constitutes punishment for all registrants. This holding necessarily included those registrants covered by the recapture provision. Further, the punishment was grossly disproportionate under the four-factor test from *People v Lorentzen*, 387 Mich 167 (1972). Specifically, first, subjecting defendant and similarly situated individuals to registration as sex offenders exceeded any punishment that would be suitable to fit a nonsexual crime, given that such individuals have not been convicted of a sexual offense in the last 30 years. Second, the separate, additional punishment imposed by the recapture provision for nonsexual-offense convictions results in more severe penalties than would otherwise be imposed for nonsexual offenses in Michigan. The penalty imposed by the recapture provision was not analogous to a habitual-offender sentence enhancement, which can only increase the statutory punishment for the offense to which it is attached and does not allow trial courts to add a punishment that otherwise is not authorized for the convicted offense. Third, the vast majority of states do not impose a registration requirement on nonrecidivist sex offenders for nonsexual offenses. Finally, requiring SORA registration did not advance the goal of rehabilitation because it was not targeted at the conduct that resulted in the triggering conviction and it frustrated a defendant's ability to address the root causes of their nonsexual criminality and reintegrate into society.

Court of Appeals judgment reversed; case remanded to the trial court to remove the registration requirement from defendant's judgment of sentence.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 22, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                          No. 166766

JAMES ELLIS, JR.,

     Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CAVANAGH, C.J.

Michigan's Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, imposes registration requirements on people who are convicted of the serious sexual offenses enumerated in the act, known as "listed" offenses, MCL 28.722(i). While those convicted of a listed offense prior to October 1995—when the first version of SORA went into effect—are not required to register for that conviction, these individuals are subject to registration requirements under SORA's "recapture" provision, MCL 28.723(1)(e), if they

are subsequently convicted of "any other felony" on or after July 1, 2011. This case concerns the constitutionality of the recapture provision to the extent that it imposes SORA registration requirements on individuals with a listed sexual offense conviction—for which they were not required to register under SORA—who subsequently are convicted of a nonsexual felony.[1] Defendant James Ellis, Jr. contends that the recapture provision is unconstitutional because it imposes a cruel or unusual punishment—SORA registration— for nonsexual offenses.[2] We agree. Because we conclude that the recapture provision is cruel or unusual when imposed as punishment for nonsexual offenses, we hold that this provision of the statute is unconstitutional under the Michigan Constitution as applied to defendant and similarly situated individuals. Const 1963, art 1, § 16. Accordingly, we reverse the judgment of the Court of Appeals. Because defendant is entitled to sentence modification, we remand this case to the trial court to remove the registration requirement from his judgment of sentence.

## I. REGISTRATION UNDER SORA

For the last three decades, offenders convicted of certain sexual offenses have been required to register with law enforcement as part of their sentence under Michigan's SORA. The first iteration of Michigan's SORA took effect in October 1995. 1994 PA

---

[1] Our constitutional inquiry is limited to the application of the recapture provision to defendant and similarly situated individuals who are subsequently convicted of a nonsexual felony—that is, a felony that is not a listed offense subject to SORA registration *in any circumstance*.

[2] Because defendant does not argue that the recapture provision is cruel or unusual in all instances, we decline to consider whether there are other circumstances where the recapture provision can be constitutionally applied.

295.[3] The initial version of the law created a nonpublic database of sex-offender information and required persons convicted of certain sexual offenses to register and notify law enforcement of address changes. See MCL 28.723, MCL 28.724, MCL 28.725(1), and MCL 28.728, as enacted by 1994 PA 295; see also *People v Betts*, 507 Mich 527, 533; 968 NW2d 497 (2021). Through subsequent amendments, the Legislature has expanded registry access to the public and increased the obligations imposed on registrants. See *People v Kardasz*, ___ Mich ___, ___; ___ NW3d ___ (December 19, 2025) (Docket No. 165008); slip op at 6-10 (discussing the history of Michigan's SORA). Under the 2021 SORA,[4] which is the current version of the law, registrants are subject to periodic in-person reporting requirements. MCL 28.725. Additionally, registrants must report any changes to their registry information within three days, including any travel plans longer than seven days. MCL 28.725(1), (3), (7), and (8).

The 2021 SORA divides offenders into tiers based on the offense of conviction and any prior history of conviction of registrable offenses. MCL 28.722(q) through (v), as amended by 2024 PA 66. Consistent with its federal counterpart, the Sex Offender Registration and Notification Act (SORNA), 34 USC 20901 *et seq.*, Michigan's 2021 SORA links the duration of registration to these offense-based tiers: Tier I offenders must register for 15 years, Tier II offenders for 25 years, and Tier III offenders for life. MCL 28.725(11) to (13); see 34 USC 20915. A registrant's tier determines their in-person

---

[3] Michigan's SORA was approved on July 13, 1994, and took effect on October 1, 1995. 1994 PA 295.

[4] MCL 28.721 *et seq.*, as amended by 2020 PA 295, effective March 24, 2021.

reporting requirements, as well as whether and when they can petition for removal from the registry.[5]

Before SORA became effective in October 1995, individuals convicted of crimes that are now listed sexual offenses under SORA were not subject to registration requirements as part of their sentences. In 2011, the Legislature amended SORA to include a "recapture" provision that would impose registration requirements on certain offenders who were convicted of listed offenses before October 1995. See 2011 PA 17. The recapture provision, MCL 28.723(1)(e), imposes SORA's registration requirements on pre-SORA sex offenders who are subsequently convicted of a felony that is not a listed SORA offense. The recapture provision provides:

> (1) Subject to subsection (2), the following individuals who are domiciled or temporarily reside in this state or who work with or without compensation or are students in this state are required to be registered under this act:
>
> * * *
>
> (e) An individual who was previously convicted of a listed offense for which he or she was not required to register under this act, but who is convicted of any other felony on or after July 1, 2011. [MCL 28.723(1)(e).]

---

[5] Tier I offenders must report in person once annually and can petition for removal after 10 years. MCL 28.725a(3)(a); MCL 28.728c(12). Tier II offenders must report in person twice per year. MCL 28.725a(3)(b). Tier III offenders must report in person four times per year and may petition for removal if they were adjudicated as juveniles, have not committed any felony (sexual or otherwise) or another registrable sexual offense for 25 years, and have successfully completed all conditions of supervised release. MCL 28.725a(3)(c); MCL 28.728c(13). Registrants in any tier may also petition for removal under SORA's so-called "Romeo and Juliet" provision, which allows removal if the sexual act was consensual and other conditions concerning the ages of the victim and the defendant are met. MCL 28.728c(14).

So, the recapture provision applies only to a narrow category of individuals—those convicted of a listed sexual offense before October 1995 who have not been convicted of another listed offense in the intervening years but have been convicted of any other felony on or after July 1, 2011. The vast majority of these "other felon[ies]" are nonsexual offenses that would not otherwise require registration.[6]

## II. FACTS AND PROCEDURAL BACKGROUND

In 1983, defendant was accused of attempted rape after attending a college party in Illinois. According to the complainant, defendant forced her into a bedroom at knifepoint, stole money from her purse, and tried to have intercourse with her, but she locked her legs together and yelled for a friend, who intervened before defendant could complete the rape. Defendant denied the allegations but ultimately pleaded guilty to robbery and attempted rape in the Illinois case. In 1984, he was sentenced to six months in jail and two years of probation.

---

[6] Although not at issue in the present case, a small minority of felonies are listed offenses under SORA only if certain facts are present and thus require registration in certain circumstances. See, e.g., MCL 28.722(r)(*vi*), citing MCL 750.539j (surveilling or photographing a nude or partially nude person where they have a reasonable expectation of privacy); MCL 28.722(t)(*vi*) and (v)(*i*), citing MCL 750.338, MCL 750.338a, and MCL 750.338b (gross indecency); MCL 28.722(v)(*iv*). Because these felonies are listed offenses only if the victim is a minor or if the underlying conduct was nonconsensual, convictions for these offenses that do not meet SORA's age and consent criteria may trigger the recapture provision. We do not decide whether these applications of the recapture provision are constitutional because defendant here only challenges the recapture provision's application to felonies that are nonsexual in all instances.

5

In the intervening years, defendant has not been charged with another sexual offense. However, he has accrued multiple felony and misdemeanor convictions for theft and other property offenses, including the conviction at issue in this case.[7]

This appeal arises from defendant's recent conviction of attempted robbery. In November 2021, defendant stole an $18 ribeye steak from a Walmart store in Niles, Michigan. When a store employee confronted defendant as he was leaving the store, defendant assaulted the employee.[8] Defendant was subsequently charged with unarmed robbery. MCL 750.530.

Defendant pleaded guilty to attempted unarmed robbery, MCL 750.530; MCL 750.92, and the trial court sentenced him to a prison term of one to five years. As part of defendant's 2022 sentence, the trial court also imposed lifetime registration as a Tier III offender under the recapture provision of SORA, due to defendant's 1983 attempted rape conviction. The trial court overruled defense counsel's objection that imposing the SORA registration requirement would be an unconstitutional punishment, explaining this was an issue for an appellate court to decide.

Defendant moved to correct an invalid sentence, challenging the requirement to register under SORA and the constitutionality of the recapture provision. Specifically, defendant argued that the recapture provision was an ex post facto punishment or, in the alternative, cruel or unusual punishment. He also argued that the trial court violated the

[7] Note that defendant's other offenses occurred in other jurisdictions and thus did not trigger the recapture provision.

[8] The nature of this assault is disputed. The prosecution asserts that defendant punched the employee in the face, but defendant stated as part of his plea that he only bumped the employee.

plain terms of the statute by applying it in his case because he was an out-of-state resident. After a hearing, the trial court denied the motion.

Defendant sought leave to appeal in the Court of Appeals, raising the same three issues from his motion to correct an invalid sentence. The Court of Appeals granted leave and ultimately affirmed in an unpublished per curiam opinion. *People v Ellis*, unpublished per curiam opinion of the Court of Appeals, issued January 18, 2024 (Docket No. 363845). However, the Court of Appeals concluded that defendant, as an out-of-state resident, did not have to register under SORA until such time as he becomes a resident or temporary resident of Michigan. *Id*. at 2.

Defendant then applied for leave to appeal in this Court. We ordered oral argument on the application, directing the parties to address

> (1) whether MCL 28.723(1)(e), the "recapture" provision of the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., as amended by 2020 PA 295, effective March 24, 2021, constitutes ex post facto punishment under the United States or Michigan Constitutions, US Const, art I, § 9; Const 1963, art 1, § 10, see *People v Betts*, 507 Mich 527 (2021); (2) whether requiring the defendant to register as a sex offender under MCL 28.723(1)(e) and MCL 28.721 *et seq*., constitutes cruel or unusual punishment under Const 1963, art 1, § 16, or US Const, Am VIII, see *People v Lymon*, [515 Mich 145; 29 NW3d 58 (2024)], and *People v Kardasz*, 513 Mich 1118 (2024) (ordering oral argument on the application for leave to appeal in Docket No. 165008); (3) whether the defendant's out-of-state residency and the conditional application of SORA while the defendant remains an out-of-state resident renders the constitutional issues here not ripe for review; (4) for ex post facto purposes, whether it is the later, nonsexual offense that triggers SORA registration rather than the earlier sexual offense, see *People v Klinesmith* [*On Remand*], 342 Mich App 39[; 993 NW2d 21] (2022) [*Klinesmith I*]; (5) how, if at all, the sexual nature of the prior unregistered sex offense affects the determination whether recapture is cruel or unusual punishment, or punishment at all; and (6) assuming arguendo that the focus of the recapture inquiry is properly on the earlier sex offense, whether the defendant's entitlement to relief on ex post facto grounds depends on this Court's decision in *Kardasz*. [*People v Ellis*, 516 Mich 887, 887 (2024).]

7

Before hearing argument in this case, we issued an opinion in *Kardasz*, holding that the 2021 SORA constitutes punishment but is not cruel or unusual in every instance or as applied to the defendant in that case. *Kardasz*, ___ Mich at ___; slip op at 42. As a result, we directed supplemental briefing, allowing the parties an opportunity to address whether the decision in *Kardasz* affects the issues outlined in our earlier order. *People v Ellis*, ___ Mich ___; 29 NW3d 156 (2026).

Defendant was discharged from parole in this case on April 15, 2025. He currently lives in South Bend, Indiana, where he has resided since 2011.

## III. STANDARD OF REVIEW

Whether a claim is ripe for review is an issue of law that we review de novo. *Hendee v Putnam Twp*, 486 Mich 556, 566; 786 NW2d 521 (2010). Questions of constitutional law are also reviewed de novo. *Lymon*, 515 Mich at 159. "Statutes are presumed to be constitutional, and the party challenging the statute has the burden of showing to the contrary." *Id*.

## IV. DEFENDANT'S CONSTITUTIONAL CLAIMS ARE RIPE

A claim is ripe for review when there is "a final decision from which an actual or concrete injury can be determined." *Paragon Props Co v Novi*, 452 Mich 568, 583; 550 NW2d 772 (1996). The doctrine of ripeness "prevents the adjudication of hypothetical or contingent claims before an actual injury has been sustained." *Mich Chiropractic Council v Comm'r of the Office of Fin & Ins Servs*, 475 Mich 363, 371 n 14; 716 NW2d 561 (2006), overruled in part on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010). Our ripeness inquiry "must balance the need for further factual development,

8

combined with any uncertainty as to whether defendant[] will actually suffer future injury, with the potential hardship of denying anticipatory relief." *People v Warner*, 514 Mich 41, 62-63; 22 NW3d 1 (2024), quoting *Dep't of Social Servs v Emmanuel Baptist Preschool*, 434 Mich 380, 412; 455 NW2d 1 (1990) (M. F. CAVANAGH, J., concurring).

The prosecution argues that defendant's claims would be ripe only if he were currently required to register in Michigan. We disagree. Even though defendant is not currently required to register in Michigan, the judgment of sentence that applies the recapture provision to him is "a final decision from which an actual or concrete injury can be determined[.]" *Paragon*, 452 Mich at 583. Defendant's apparent lack of plans to live or work in Michigan does not render his claims "hypothetical or contingent" on future events. *Mich Chiropractic Council*, 475 Mich at 371 n 14. He has appealed a final decision of the trial court: his judgment of sentence, which includes a registration requirement. This Court *can* provide relief from registration and require modification of the judgment of sentence. Although the imposition of SORA registration requirements is contingent on defendant living or working in Michigan, the *application of SORA* to defendant is not. Accordingly, we hold that defendant has established that his claim is ripe for appellate review.[9]

---

[9] We also note that, while not dispositive, it is meaningful that defendant is a resident of Indiana, which shares a border with Michigan. Moreover, defendant is a longtime resident of South Bend, a city that is located approximately 6 miles from the Michigan-Indiana border. Given the breadth and severity of SORA registration requirements, it is significant that merely the threat of SORA registration could act as a form of banishment from the state from which defendant lives but miles away.

9

## V. TRIGGERING OFFENSE

As a threshold matter, we must determine which offense triggers the recapture provision—defendant's 1983 sex crime or his recent conviction for attempted unarmed robbery. Defendant argues that the recapture provision constitutes unconstitutional punishment because it is cruel or unusual as applied to him and similarly situated individuals, Const 1963, art 1, § 16; US Const, Am VIII, or, alternatively, an ex post facto law, Const 1963, art 1, § 10; US Const, art I, § 10. While both offenses are undoubtedly relevant to the application of the recapture provision, our constitutional analysis depends on whether the statute imposes punishment for the earlier or the later offense. If the more recent felony offense conviction, which is not a listed offense under SORA, triggers the application of the recapture provision, then a cruel or unusual punishment analysis is appropriate to undertake first. See, e.g., *Lymon*, 515 Mich at 159; see also *Kardasz*, ___ Mich at ___; slip op at 4-5. But if the recapture provision is triggered by the 1983 sexual offense conviction, we instead should analyze the statute under ex post facto principles. See, e.g., *Betts*, 507 Mich at 541-542, 574 (holding that charging the defendant with violating SORA's registration requirements for failure to register for a pre-SORA sexual offense violated ex post facto principles).

We conclude that the recapture provision is triggered by the later felony conviction. When an individual is subjected to SORA registration requirements through the recapture provision, it is their later felony conviction that allows the trial court to impose those requirements. MCL 28.723(1)(e). As the Court of Appeals below observed, " 'had defendant not committed a new felony, he would remain free from the requirements of SORA.' " *Ellis*, unpub op at 4, quoting *Klinesmith I*, 342 Mich App at 45. Individuals

10

who have been convicted of only pre-SORA sexual offenses have no obligation to register under SORA. While an individual's pre-SORA sexual offense determines their specific obligations under SORA, the earlier offense only becomes relevant once the individual later commits another felony that is not listed under SORA. Moreover, the recapture provision does not modify or affect the sentence for the pre-SORA sexual offense. Rather, SORA registration requirements are imposed as part of the judgment of sentence for the later offense.

While we agree with the Court of Appeals' conclusion that it is the later offense that triggers the recapture provision, the panel's analysis failed to acknowledge the unique nature of this statute. Specifically, although the recapture provision is triggered by the later offense, it clearly *targets* the prior offense. As with the other provisions of SORA, the Legislature enacted the recapture provision to address criminal sexual offenses. Consistent with SORA's stated purpose to "better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders," MCL 28.721a, SORA registration requirements are intended to reduce the possibility of sex offenders being able to commit subsequent sexual offenses. The recapture provision simply extends SORA to a group of individuals who would not be subject to registration for pre-SORA sexual offense convictions but for a later felony conviction not listed under SORA. MCL 28.723(1)(e). On the other hand, nothing in the recapture provision targets the criminal conduct underlying the triggering offense because the provision is triggered by *any* felony that is not a listed offense under SORA. See *id*.

11

Because we conclude that the later offense triggers the recapture provision, we proceed with a cruel or unusual punishment analysis.[10]

## VI. CRUEL OR UNUSUAL PUNISHMENT CHALLENGE

Defendant argues that the recapture provision is unconstitutional as it applies to him and similarly situated defendants because it constitutes cruel or unusual punishment to the extent it imposes SORA registration requirements for nonsexual felony convictions.

Under the Michigan Constitution, "cruel or unusual punishment shall not be inflicted[.]" Const 1963, art 1, § 16. When determining whether a statute constitutes cruel or unusual punishment, we first consider whether the challenged law constitutes punishment. *Lymon*, 515 Mich at 160. If we conclude that the statute is a punishment, we must then determine whether that punishment is cruel or unusual. See generally *People v Bullock*, 440 Mich 15, 33-35; 485 NW2d 866 (1992).

In two recent cases, we addressed whether the 2021 SORA is cruel or unusual punishment. In *Lymon*, 515 Mich at 162-190, we determined that the 2021 SORA was punishment as applied to nonsexual offenders and further held that the punishment was cruel or unusual. Then in *Kardasz*, we extended our reasoning from *Lymon* to conclude that the 2021 SORA constitutes punishment for all registrants, but we ultimately held that the punishment was not cruel or unusual in all instances, including as applied to the defendant. *Kardasz*, ___ Mich at ___; slip op at 32-33, 41. Both of these cases are relevant

---

[10] We decline to reach defendant's ex post facto claim only because we resolve this appeal on other grounds. We note that, in concluding that the recapture provision is not an unconstitutional ex post facto law, *Ellis*, unpub op at 4, the Court of Appeals did not contend with the fact that the provision *targets* pre-SORA sexual offense convictions, even if those offenses are not the triggering offenses.

12

to our inquiry here because, as discussed above, the recapture provision is triggered by a nonsexual criminal offense but targets a past criminal sexual conviction.

## A. THE RECAPTURE PROVISION IS PUNISHMENT

Our recent decision in *Kardasz* establishes that the recapture provision constitutes punishment. Our holding in *Kardasz* that the 2021 SORA constitutes punishment for all registrants necessarily includes those registrants covered by the recapture provision. See *Kardasz*, ___ Mich at ___; slip op at 14, 32. As a result, we need not separately analyze whether the recapture provision constitutes punishment and instead adopt our reasoning from *Kardasz* in full.

Our punishment analysis in *Kardasz* largely followed the reasoning from *Lymon*. We first concluded that the Legislature intended the 2021 SORA as a civil regulation, consistent with *Lymon*, 515 Mich at 162-163. *Kardasz*, ___ Mich at ___; slip op at 15-16. We then applied the relevant factors from *Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963), to determine whether the 2021 SORA " 'is so punitive either in purpose or effect as to negate the State's intention to deem it civil,' " *Kardasz*, ___ Mich at ___; slip op at 16-17, quoting *People v Earl*, 495 Mich 33, 38; 845 NW2d 721 (2014).[11]

---

[11] We have identified the following five factors as particularly relevant to this inquiry:

> (1) whether the statute has historically been regarded as punishment; (2) whether the statute imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a nonpunitive purpose; and (5) whether the statute is excessive with respect to its nonpunitive purpose. [*Lymon*, 515 Mich at 162; see *Mendoza-Martinez*, 372 US at 168-169.]

As to the first *Mendoza-Martinez* factor, *Kardasz* adopted *Lymon*'s conclusion that the 2021 SORA does not resemble the traditional punishment of banishment, but it does resemble parole and shaming, and therefore, this factor weighed in favor of a determination that the 2021 SORA is punishment. *Kardasz*, ___ Mich at ___; slip op at 17-20; see *Lymon*, 515 Mich at 164-169.  The second factor likewise favored the determination that the 2021 SORA is punishment because of the many significant burdens it imposes on registrants, including the disclosure of personal information and other reporting requirements. *Kardasz*, ___ Mich at ___; slip op at 21-23; see *Lymon*, 515 Mich at 169-172.  The third factor also supported a finding of punishment because the registration requirements were still linked solely to the crime of conviction rather than to an individualized risk assessment, which aligned with the traditional penological goal of retribution.  *Kardasz*, ___ Mich at ___; slip op at 23-24; see *Lymon*, 515 Mich at 172-174.  However, we concluded that the fourth factor weighed against the conclusion that the 2021 SORA is punishment, as we previously held in *Lymon*, because the 2021 SORA has a rational connection to the nonpunitive purpose of assisting law enforcement officers and the public in preventing and protecting against the commission of future sexual offenses by convicted sex offenders.  *Kardasz*, ___ Mich at ___; slip op at 24-25; see *Lymon*, 515 Mich at 174-175.

Finally, we concluded that the 2021 SORA's tiering system, onerous reporting requirements, and overinclusive public registry website are excessive relative to the statute's stated public-safety purpose. *Kardasz*, ___ Mich at ___; slip op at 25-32. On this point, we deviated from our reasoning in *Lymon*, where we had concluded that the 2021 SORA's "requirements and consequences—imposed on non-sexual offenders regardless

of their risk of recidivism as a group or individually—are excessive" in comparison to its asserted public-safety purpose of protecting against future criminal sexual offenses. *Lymon*, 515 Mich at 176-179. We note that the present case implicates both *Kardasz*'s and *Lymon*'s analyses on this point because the recapture provision imposes SORA's burdensome requirements and restraints as a penalty for nonsexual offenses committed by individuals who have gone at least 30 years without being convicted of another sexual offense.

In alignment with our precedent, we continue to find that the 2021 SORA as a whole is excessive with respect to its nonpunitive purpose, and thus the recapture provision's imposition of SORA registration requirements constitutes punishment.

## B. THE RECAPTURE PROVISION IS CRUEL OR UNUSUAL PUNISHMENT

We now address for the first time whether the recapture provision of the 2021 SORA is unconstitutional under Michigan's prohibition against cruel or unusual punishment, Const 1963, art 1, § 16. To resolve this question, we assess whether the punishment is "grossly disproportionate" under the four-factor test from *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972), as affirmed in *Bullock*, 440 Mich at 33-35. Under this test, we consider:

> (1) the harshness of the penalty compared to the gravity of the offense; (2) the penalty imposed for the offense compared to the penalties imposed for other offenses in Michigan; (3) the penalty imposed for the offense in Michigan as compared to the penalty imposed for the same offense in other states; and (4) whether the penalty imposed advances the goal of rehabilitation. [*Lymon*, 515 Mich at 183, citing *Bullock*, 440 Mich at 33-34.]

15

## 1. HARSHNESS OF THE PENALTY COMPARED TO THE GRAVITY OF THE OFFENSE

Under the first factor, we consider whether "the punishment is in excess of any that would be suitable to fit the crime." *Lorentzen*, 387 Mich at 176; see *Bullock*, 440 Mich at 33. In *Lymon*, we observed that nonsexual offenders were not personally or morally responsible for having committed a sexual offense, but SORA treated them as though they were. *Lymon*, 515 Mich at 184. There, we concluded that the penalty of being subject to the sex offender registry for a nonsexual crime, imposed in addition to the defendant's prison sentence, was excessive in comparison to the offense committed and so weighed in favor of a conclusion of gross disproportionality. *Id*.

Here, our reasoning in *Lymon* is instructive but not dispositive. The recapture provision similarly imposes SORA registration requirements as a penalty for nonsexual offenses. Because the provision is triggered by "any felony" that is not a listed offense under SORA, MCL 28.723(1)(e), it applies to nonsexual offenses. While the gravity of those offenses varies widely, the provision encompasses even lower-level felony offenses, such as the attempted unarmed robbery conviction at issue here. By contrast, *Lymon* addressed a limited number of more severe nonsexual offenses—all of which were crimes involving minors—and concluded that registration requirements were still an excessive penalty. See *Lymon*, 515 Mich at 184-185, citing MCL 28.722(r)(*iii*) (unlawful imprisonment of a minor), (t)(*i*) (accosting, enticing, or soliciting a minor), and (v)(*ii*) (kidnapping a minor).

Although defendant here was previously convicted of a sexual offense, unlike the defendant in *Lymon*, this does not mitigate the excessive penalty of imposing SORA

registration requirements for a nonsexual offense. While we concluded in *Kardasz* that SORA registration was not an excessive penalty for "grave" sexual offenses, we also acknowledged that "the excessiveness of SORA's reporting requirements may increase over time, such as for Tier III offenders who have lived offense-free for decades." *Kardasz*, ___ Mich at ___; slip op at 35. The penalty imposed by the recapture provision is excessive as applied to defendant and similarly situated individuals because these offenders have not been convicted of a sexual offense in the last 30 years. Indeed, defendant's sexual offense occurred more than 40 years ago. Defendant has fully served his sentence for attempted rape and has not been convicted of another sexual offense. The recapture provision triggers a registration penalty for defendant's attempted unarmed robbery conviction and treats that conviction as if it were a listed sexual offense. Despite no evidence of recidivism specific to sexual offenses, the statute seeks to subject these individuals to the sex offender registry for nonsexual crimes. See *Lymon*, 515 Mich at 184 ("This penalty of being subject to the sex-offender registry for a non-sexual crime, imposed in addition to a defendant's prison sentence for the non-sexual crime committed, is excessive in comparison to the offense committed and so weighs in favor of a conclusion of gross disproportionality."). We therefore conclude that this factor weighs in favor of a conclusion of gross disproportionality.

2. PENALTY IMPOSED FOR THE OFFENSE COMPARED TO OTHER OFFENSES

Under the second factor, we consider the challenged penalty relative to penalties imposed for other offenses in Michigan. *Bullock*, 440 Mich at 33. In *Lymon*, we concluded that this factor weighed in favor of gross disproportionality after comparing the defendant's

17

nonsexual offense—false imprisonment of a minor—to sexual offenses that imposed the same registration requirements, as well as to the similar nonsexual offense of false imprisonment of an adult that did not require SORA registration. *Lymon*, 515 Mich at 184-186.

Here, too, *Lymon* aids our analysis. As part of his sentence for attempted unarmed robbery, defendant is subject to lifetime registration as a Tier III offender under SORA. The recapture provision imposes the same penalty for defendant's nonsexual offense that SORA imposes for "the most elevated sexual assaults," see *Kardasz*, ___ Mich at ___; slip op at 34, 37-38, including first-degree criminal sexual conduct, MCL 750.520b; second-degree criminal sexual conduct against an individual less than 13 years of age, MCL 750.520c; third-degree criminal sexual conduct, MCL 750.520d; gross indecency against an individual less than 13 years of age, MCL 750.338 through MCL 750.338b; and sexual contact or penetration with a dead human body, MCL 750.160d.

Following our decision in *Lymon*, the recapture provision is the only remaining statutory mechanism that imposes SORA registration as punishment for nonsexual offenses. Moreover, as we observed in *Kardasz*, the nonsexual offenses that can result in "lifetime or long term-of-years prison sentences" are similarly "grave offenses" to the listed sexual offenses in SORA that impose registration requirements. *Kardasz*, ___ Mich at ___; slip op at 37, citing MCL 750.317 (second-degree murder), MCL 750.543f (terrorism), and MCL 750.85 (torture). By contrast, the recapture provision imposes registration requirements for even the lowest level nonsexual felonies, including the offense at issue here.

18

We disagree with the prosecution's contention that the penalty imposed by the recapture provision is analogous to a habitual-offender sentence enhancement. While these provisions may have a facially similar underpinning, in that both provide punishments that take into account a defendant's status as a prior offender, the statutory mechanisms are distinct.[12] Under Michigan's sentencing enhancement statutes, see MCL 769.10, MCL 769.11, MCL 769.12, and MCL 769.13, a habitual-offender sentencing enhancement can only increase the statutory punishment for the offense to which it is attached, while the recapture provision allows trial courts to add a punishment that otherwise is not authorized for the convicted offense. If a defendant is convicted of attempted unarmed robbery as a habitual offender, they can only be sentenced to a longer period of incarceration, parole, or probation. MCL 769.10, MCL 769.11, and MCL 769.12; see MCL 750.530.[13] For some habitual offenders, the increased penalty could be decades or up to life in prison. See MCL 769.12. However, SORA registration requirements could not be added to a subsequent nonsexual offense under the sentencing enhancement statutes—even if the offender had a prior sexual conviction. See MCL 769.12 and MCL 769.13. The registration requirements

---

[12] We also note that Michigan courts have upheld habitual-offender sentence enhancements in constitutional challenges. See, e.g., *People v Burkett*, 337 Mich App 631, 642; 976 NW2d 864 (2021) (holding that a minimum sentence for habitual offenders mandated by MCL 769.12(1)(a) is neither cruel nor unusual under the Michigan Constitution).

[13] Michigan's habitual-offender sentencing statutes generally authorize trial courts to impose an increase of up to 1½ times the maximum term-of-years sentence for a second felony conviction, MCL 769.10(1)(a); double the maximum term-of-years sentence for a third felony conviction, MCL 769.11(1)(a); and up to life imprisonment for a fourth felony conviction, MCL 769.12(1)(b). If a fourth felony conviction constitutes a "serious crime," the offender may be subject to a mandatory minimum sentence of 25 years. MCL 769.12(1)(a).

imposed by the recapture provision essentially function as a second, separate punishment and are in no way tied to the convicted offense or underlying conduct.[14]

In addition, the recapture provision "*require*[*s*]" qualifying individuals "to be registered" under SORA, MCL 28.723(1)(e) (emphasis added), while sentencing enhancements are not automatically applied to the judgment of sentence, see MCL 769.13. A sentencing enhancement can be imposed only if the prosecutor gives the defendant notice prior to sentencing. MCL 769.13(1) to (3). The defendant then is entitled to an opportunity to refute evidence regarding the prior conviction or convictions that the prosecution is relying on to support the sentence enhancement. MCL 769.13(4) and (5). The recapture provision does not provide any such notice or opportunity for an evidentiary hearing. And trial courts still have discretion to impose an individualized sentence under the sentencing enhancement statutes,[15] while the recapture provision imposes the same severe penalty on every qualifying defendant.

We conclude that this factor weighs in favor of a gross disproportionality determination because the separate, additional punishment imposed by the recapture

---

[14] It is worth noting that defendant in this case could have been convicted of attempted unarmed robbery as a habitual offender. However, the prosecution agreed not to pursue a sentencing enhancement in the plea agreement. This only reinforces that the later nonsexual criminal conduct for which defendant was convicted is not the target of the recapture provision.

[15] The sentencing enhancement statutes impose certain mandatory requirements for the length of enhanced sentences. For example, a defendant convicted as a habitual offender cannot receive a maximum sentence that is less than the maximum term for a first conviction. MCL 769.10(2); MCL 769.11(2); MCL 769.12(2). And a defendant with three or more prior felony convictions who is convicted of a serious felony must be sentenced to a minimum term of at least 25 years in prison if at least one of the prior convictions was a "listed prior felony" as defined in MCL 769.12(6)(a). MCL 769.12(1)(a).

20

provision for nonsexual offense convictions results in more severe penalties than would

otherwise be imposed for nonsexual offenses in Michigan.

### 3. PENALTY IMPOSED FOR THE OFFENSE IN MICHIGAN COMPARED TO OTHER STATES

Regarding the third factor, the penalty imposed for the offense in Michigan as

compared to the penalty imposed for the same offense in other states, *Bullock*, 440 Mich

at 33-34, we diverge from our analysis in *Lymon*. There, we observed that Michigan's

inclusion of certain nonsexual offenses within its sex-offender-registry law is consistent

with the majority of jurisdictions, but in light of the wide variance among other states'

registries, we determined that this factor weighed only slightly against a gross

disproportionality conclusion. *Lymon*, 515 Mich at 186-189. Here, by contrast, Michigan

is one of only three states with a recapture provision.[16] Illinois and Maryland are the only

other two states that have enacted recapture provisions. See 730 Ill Comp Stat

150/3(c)(2.1); MD Code Crim Pro § 11-702.1(a)(3).[17]

---

[16] Several other states impose retroactive registration requirements for offenses committed prior to the enactment of state registration laws, but, unlike here, those laws are triggered by sexual offenses and raise ex post facto questions not addressed here. See *Kardasz*, ___ Mich at ___; slip op at 8 n 14 (collecting cases).

[17] We note that Maryland courts have upheld constitutional challenges to other provisions of the state's sex offender registry statute that retroactively impose registration requirements on individuals who were not subject to registration when convicted of a sexual offense. See *Doe v Dep't of Pub Safety & Correctional Servs*, 430 Md 535; 62 A3d 123 (2013); *Quispe del Pino v Dep't of Pub Safety & Correctional Servs*, 222 Md App 44; 112 A3d 522 (2015).

Because the vast majority of states do not impose a registration requirement on non-recidivist sex offenders for nonsexual offenses, this factor supports the conclusion that the recapture provision is grossly disproportionate.

### 4. WHETHER THE PENALTY IMPOSED ADVANCES THE GOAL OF REHABILITATION

Finally, the fourth factor requires us to consider whether the penalty imposed advances the goal of rehabilitation. *Bullock*, 440 Mich at 34. We conclude that it does not. In *Lymon*, we reasoned that "[b]randing an offender who did not commit a sexual offense as a sex offender and subjecting that offender to the attendant social stigma and law-enforcement supervision of that label does not address the underlying causes of a defendant's conduct or support a defendant's reintegration as a noncriminal member of society." *Lymon*, 515 Mich at 189. Similarly, imposing registration requirements and the attendant stigma and burdens on sex offenders like defendant who have not reoffended for more than 30 years as a penalty for nonsexual offenses does nothing to rehabilitate these individuals. It is not targeted at the conduct that resulted in the triggering conviction. Instead, the recapture provision serves to frustrate a defendant's ability to address the root causes of their nonsexual criminality and reintegrate into society.

Our reasoning in *Kardasz* also supports this conclusion. There, we observed that "lifetime registration may work against the goal of rehabilitation because it prevents registrants from 'securing employment and otherwise moving forward with [their] life plans.'" *Kardasz*, ___ Mich at ___; slip op at 40, quoting *Lymon*, 515 Mich at 189 (some quotation marks and citation omitted; brackets in *Kardasz*). Indeed, for all individuals subject to SORA's requirements, registration hampers the ability to move, obtain new

22

employment, integrate into a new community, and travel. It also has significant mental health impacts and "leads to severe social consequences that may inhibit rehabilitation and law-abiding behavior." *Kardasz*, ___ Mich at ___; slip op at 41.

Accordingly, this factor weighs in favor of a gross disproportionality conclusion because the recapture provision does not support the goal of rehabilitating nonsexual criminal conduct, nor is it an effective means of rehabilitating sex offenders.

### 5. GROSS DISPROPORTIONALITY

Altogether, consideration of these factors supports the conclusion that the recapture provision is grossly disproportionate as applied to defendant and those similarly situated whose registration is triggered by a nonsexual offense. Imposing these registration requirements therefore constitutes cruel or unusual punishment.[18] SORA registration is an excessively harsh punishment for nonsexual criminal offenses. It is disproportionate to other penalties in both Michigan and the vast majority of other jurisdictions. And it does nothing to advance the goal of rehabilitating the nonsexual criminal conduct that it punishes.

### VII. CONCLUSION

We conclude that the recapture provision's imposition of SORA registration requirements is cruel or unusual punishment as applied to defendant and similarly situated individuals whose SORA registration was triggered by a later nonsexual felony.

---

[18] Defendant also challenges the recapture provision under the federal Constitution's prohibition against "cruel *and* unusual" punishment, US Const, Am VIII (emphasis added). Because we have concluded that the recapture provision violates the Michigan Constitution, we need not conduct a separate analysis under the federal Constitution.

Accordingly, we hold that the imposition of SORA registration requirements on individuals convicted of a nonsexual offense who also have a pre-SORA sexual offense conviction is unconstitutional under the Michigan Constitution. We further hold that the Court of Appeals erred in concluding that the recapture provision is constitutional, and we reverse its judgment. Defendant is entitled to sentence modification, so we remand this case to the trial court to remove the registration requirement from his judgment of sentence. We do not retain jurisdiction.

Megan K. Cavanagh
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood